IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RICHARD BAKER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CASE NO. 5:07-CV-0796-KOB |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

On December 1, 2003, claimant, Richard P. Baker, filed applications for Disability Insurance Benefits and Supplemental Security Income payments alleging disability commencing on June 1, 1971. (R. 19). Claimant subsequently amended the onset date to March 1, 2004. (R. 57). The Commissioner denied the claims. Claimant timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on August 15, 2005. (R. 296).

In a decision dated February 21, 2006, the ALJ found that Claimant was not disabled within the meaning of the Social Security Act and was not eligible for Disability Insurance Benefits and Supplemental Security Income payments. (R. 30). On March 2, 2007, the Appeals Council denied Claimant's request for review. (R. 5). Claimant has exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C. § 405(g) and 1631(c)(3). For the

1

reasons stated below, the court AFFIRMS the Commissioner's decision.

## II.  Issues Presented

In this appeal, Claimant argues that the ALJ erred in three ways.  First, the ALJ failed to adequately develop Claimant's work history for the purpose of establishing that Claimant could return to his past relevant work.  Second, the ALJ erred in finding that Claimant has no exertional limitations.  Third, the ALJ improperly relied on the Psychiatric Review Technique Form in making his residual functional capacity ("RFC") findings.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standard and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  However, "no...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the

record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> To make this determination, the Commissioner employs a five-step, sequential process:
>
> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

### V. Facts

Although the record is unclear as to the specifics, Claimant apparently previously received benefits in 1991 until the SSA terminated them in 1997. Claimant filed the current application in December 2003. Claimant initially alleged disability commencing on June 1, 1971, but amended the onset date to March 1, 2004, caused by anxiety, a panic disorder, a seizure disorder, and arthritis. (R. 20).

Claimant was fifty-seven years old at the time of the hearing and has an eighth grade education. (R. 20). His past work experience included employment as a yard laborer, production line worker/machine cutter at Wolverine, road crew laborer, painter's helper, housekeeping supervisor, and production line worker.[1] (R. 20).

**A.     Hearing Testimony**

At the August 15, 2005 hearing, Claimant testified that he was primarily disabled due to mental problems, that he suffered from panic and anxiety attacks, and that his fear of panic attacks was as great as actually having an attack. (R. 21). Claimant stated that he had attacks one to three days per week, but he admitted that medication helped control the attacks and hypertension. (R. 21). Claimant stated that he was uncomfortable around people and usually isolated himself, except for attending church and AA meetings. (R. 21). Claimant had three surgeries for gastroesophageal reflux disease. (R. 21). He performed yard work for ten to twelve hours per week, lived alone in apartment, did his own shopping, and used a bicycle for transportation because his license was suspended. (R. 21).

**B.     Treating and Consulting Sources**

The medical records state that Claimant "has a history of emergency medical treatment for urinary tract infections, ear pain, impaction of the esophagus secondary to a stricture and esophageal ulcers, bronchitis, and hallucinations secondary to alcohol withdrawal." (R. 21). On February 25, 2003, Claimant entered the hospital because of alcohol intoxication, depression, and

---

[1] The ALJ listed production line work twice for Claimant. Although the record is unclear, it appears that Claimant's work as a "production line worker/machine cutter" references his employment at Wolverine in 1999, and his work as a "production line worker" references his employment at Saab in 1989.

anxiety. (R. 21). His blood serum alcohol reading was 3.46 and the treating sources recommended detoxification, but Claimant declined. (R. 21).

Medical records from the Veteran's Administration Medical Center document Claimant's treatment from April 18, 2002 through December 17, 2003. The VA records indicate that claimant was treated for "panic attacks with agoraphobia, alcohol dependence - reportedly in early remission, hypertension, tobacco abuse, urinary tract symptoms, anemia, chronic obstructive pulmonary disease (COPD), pterygium of the right eye [a benign growth of the membrane that covers the white portion of the eye], and hyperlipidemia [abnormal levels of fat molecules in blood]." (R. 21). Claimant consistently maintained a Global Assessment Functioning ("GAF") score of 60 after each evaluation. (R. 21-22).

On February 24, 2004, Barry Wood Ph.D., performed a consultative psychological evaluation. (R. 22). Dr. Wood diagnosed claimant with "a history of alcohol abuse, rule out alcohol dependence in early full remission, a history of depressive disorder not otherwise specified with anxiety, and a mild panic disorder." (R. 22). Dr. Wood assessed Claimant's GAF score as a 67. (R. 22). On February 27, 2004, Dr. M. Gill, a consulting physician, performed a physical examination. (R. 22). Dr. Gill concluded that claimant is "able to function normally physically" and that he "might not be able to function in a stressful environment and his performance might be affected by episode panic attacks." (R. 22).

In March 2004, Steven Dobbs, Ph.D., a non-examining reviewing state agency consultant, completed a Psychiatric Review Technique Form ("PRTF"). (R. 206). Dr. Dobbs concluded that "claimant's mental impairments . . . result in mild restriction of activities of daily living. He has moderate or less limitations in understanding and memory, sustained concentration, persistence,

5

and persistence [sic] and social interaction/functioning.  He has no significant limitations pertaining to his abilities to respond appropriately to changes in the workplace.  He has never experienced an episode of decompensation of an extended duration."  (R. 24).

Subsequent treatment records from the VA document Claimant's treatment from February 3, 2004 though November 2, 2005, including records from Deborah Hogan, M.D., Claimant's treating physician at the VA.  (R. 22).  In a March 2004 psychiatric evaluation, Dr. Hogan noted that Claimant had been doing well, and in June 2004 he was essentially "the same." (R. 23).  He was attending church and AA meetings regularly, and in September 2004, he was doing "relatively well."  (R. 23).   In December 2004, he had anxiety but was still working.  (R. 23).  In March 2005, he continued to feel anxious, and had a GAF score of 55.  (R. 23).

By July 2005, Claimant had completed his probation for DUI, and he continued attending church and remained sober despite not attending AA meetings.  (R. 23-24).  An October 25, 2005 psychiatric evaluation indicated Claimant was doing well overall and that he resumed attending AA.  (R. 24).  Claimant was "dealing with his anxiety but complained of having difficulty performing the physical aspects of his work."  (R. 24).  In January 2006, Claimant had significant anxiety that was improved with Prozac, but was fearful in social situations and experienced difficulty working because of physical problems requiring manual labor.  (R. 24).

C.     **ALJ's Findings**

In making his findings, the ALJ gave "controlling weight" to Dr. Hogan's opinions because they are based on "objective clinical and diagnostic findings and her treating relationship with the claimant over a substantial period of time." (R. 28).  The ALJ gave "great weight" to Dr. Wood's opinions, Dr. Gill's opinions, and other "treating, examining and non-examining

medical sources that determined that the claimant was capable of performing work activities with not more than mild to moderate functional limitations." (R. 28).

Based on the evidence of record, the ALJ found that claimant's impairments of "depressive disorder not otherwise specified, a panic disorder with a history of agoraphobia, a personality disorder, and alcohol abuse in early, sustained remission" are severe within the meaning of the Regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 24). He accepted Dr. Dobbs's PRTF findings by expressly adopting them as his own. (R. 24). The ALJ also concluded that Claimant has no severe physical impairments. (R. 24).

The ALJ then evaluated Claimant's RFC by considering "all symptoms, including pain, and the extent to which these symptoms can reasonably be consistent with the objective medical evidence . . . and any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations." (R. 25). The ALJ utilized the "pain standard" to evaluate Claimant's subjective symptoms, which requires "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." (R. 25). See *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)).

The ALJ rejected Claimant's testimony about his subjective symptoms, finding that the medical evidence did not substantiate the alleged severity and limitations he claimed. (R. 25). Specifically, the ALJ found "that while there is evidence of a condition, or combination of

conditions, which could reasonably be expected to produce the level of pain or other symptoms which the claimant alleges precludes him from working, such allegations are inconsistent with the claimant's reported activities of daily living, the medical records in evidence, and with the findings of the consultative psychological examiner." (R. 25).

The ALJ noted that, according to the consultative physical examination, Claimant has normal physical abilities. According to the VA records, Claimant has not required treatment for any significant physical impairment, and he has responded well to treatment for his minor conditions when he complied with the recommendations. (R. 26). The ALJ also considered that Claimant is able to ride a bicycle. (R. 26).

With respect to Claimant's mental abilities, the ALJ found that Claimant "does not have a history of psychiatric hospitalizations or intensive mental health treatment second to any mental or emotional disorder, absent ongoing alcohol abuse." (R. 26). He noted that, according to the medical records, Claimant's agoraphobia does not prevent him from functioning outside of his home. Claimant works part-time and regularly attends church and AA meetings. (R. 26).

In February 2004, one month prior to the alleged onset date, Claimant estimated that he was having one panic attack per week. However, Claimant worked part-time for the same person for four years, he engaged in broad activities of daily living, and no evidence of depression existed. (R. 27). Claimant's GAF score was 67, which is indicative of "mild difficulties in social, occupation, or school functioning." (R. 27). The VA notes showed that Claimant continued to complain of symptoms of anxiety, but he did not report any anxiety attacks. (R. 27).

Based on the evidence of record, the ALJ found that "the claimant retains the following residual functional capacity: The claimant has no exertional limitations. He has mild restrictions

on activities of daily living.  He has moderate or less limitations in understanding and memory, sustained concentration, persistence, and persistence [sic], and social interaction/functioning.  He has no significant limitations pertaining to his abilities to respond appropriately to changes in the workplace.  The claimant has never experienced an episode of decompensation of an extended duration during his alleged period of disability."  (R. 28).  The ALJ found Claimant's past employment as yard laborer, production line worker, road crew laborer, painter's helper, and housekeeping supervisor to be "past relevant work" within the meaning of the Act.  The ALJ then accepted the vocational expert's testimony that Claimant could return to all of this past relevant work, with the exception of housekeeping supervisor.  (R. 28; 316).  Thus, Claimant failed to satisfy step 4 of the sequential analysis, and the ALJ found that he is not disabled within the meaning of the Act.

In declining to review the ALJ's decision, the Appeals Council noted that it disagreed with the ALJ's conclusion that yard laborer, road crew laborer, and painter's helper were past relevant work because they did not "meet the 15-year recency and/or substantial gainful activity requirements for past relevant work."  (R. 6).  However, the Appeals Council stated that it agreed with the ALJ that Claimant's employment as a production line worker at Wolverine in 1999 was past relevant work.  (R. 6).

## VI. Discussion

**A.    The ALJ Adequately Developed Claimant's Work History and Properly Determined that Claimant Could Perform His Past Relevant Work**

Claimant argues that the ALJ failed to adequately develop his work history in determining that he could return to his past relevant work.  Pl.'s Br. 4 (doc. 8).  Specifically,

Claimant argues that "the ALJ too readily determined that all of these jobs were past relevant work or performed long enough to even know how to do satisfactorily." *Id*. The Commissioner counters that the ALJ's findings with respect to Claimant's past work are irrelevant, other than Claimant's work as a production line worker at Wolverine in 1999. Commr.'s Br. 6 (doc. 9).

Generally "work experience applies when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). The ALJ found that Claimant's past relevant work included yard laborer, production line worker/machine cutter, road crew laborer, painter's helper, housekeeping supervisor, and production line worker. (R. 28). The Appeals Council, in declining to review the ALJ's decision, noted that it disagreed with the ALJ as to yard laborer, road crew laborer, and painter's helper because those jobs did not "meet the 15-year recency and/or substantial gainful activity requirements for past relevant work." However, the Appeals Council also noted that it agreed with the ALJ that Claimant's employment at Wolverine as a production line worker for four months in 1999 was "past relevant work" because the Wolverine job met the fifteen-year recency standard, and because Claimant "earned an amount equivalent to substantial gainful activity." (R. 6).

Even assuming that the ALJ erred by considering irrelevant past work, any error would be harmless because the ALJ found that Claimant is capable of returning to his past relevant work as a production line worker. The vocational expert classified Claimant's production line work at Wolverine as unskilled. (R. 316). Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . and a person can usually learn to do the job in 30 days. . . ." 20 C.F.R. § 404.1568. Claimant worked at

Wolverine for four months, significantly more than the 30 days required by the regulations for the worker to learn the "simple duties" of unskilled work.

Claimant's only objection to the relevancy of this work is that the ALJ did not elicit testimony about the "vocational adjustment that might be expected in performing production line work in these industry specific settings eight years . . . later at the time of the ALJ decision." Pl.'s Br. 5 (doc. 8). Claimant's objection has no merit. The regulations adopt a fifteen-year period "because a gradual change occurs in most jobs so that after fifteen years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 C.F.R. § 404.1565(a). Because Claimant's employment as a production line worker fell within the fifteen-year period, the ALJ's failure to elicit testimony about any vocational adjustment was not reversible error.

In summary, the court finds that the ALJ properly determined that Claimant is capable of returning to his past relevant work as a production line worker.

**B.     The ALJ Properly Determined that Claimant Has No Exertional Limitations.**

Claimant argues that the ALJ did not adequately consider the medical-vocational grids and erred in finding that Claimant has no exertional limitations. The Commissioner counters that a RFC opinion is reserved to the Commissioner, and that no treating or examining sources reported limitations that exceeded the ALJ's findings.

"[RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1545(a). A RFC determination is made at step four and step five of the sequential evaluation. *See* 20 C.F.R. § 404.1520(e). In making his RFC

determination, the ALJ considered all symptoms, including pain, and the extent to which the symptoms are reasonably consistent with the objective medical evidence. The ALJ gave "controlling weight" to Dr. Hogan's opinions, and gave "great weight" to Dr. Wood's opinions, Dr. Gill's opinions, and other "treating, examining and non-examining medical sources that determined that the claimant was capable of performing work activities with not more than mild to moderate functional limitations." (R. 28). The ALJ rejected Claimant's subjective allegations after properly applying the "pain standard," determining that they were not credible "in light of the medical evidence and his response to treatment efforts." (R. 28).

In February 2004, Claimant told Dr. Gill that he is "getting older and it is a little harder for him to do heavy lifting and his knees bother him when he stoops and squats a lot," but Claimant also stated that his problems were mental and not physical. The vocational expert testified that production line work has a medium exertional level. (R. 316). The regulations define medium exertion as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c). When the ALJ asked Claimant "how much [he was lifting] usually" as a production line worker, Claimant responded that "it's not a lot . . . [t]here's some heavier work to it, 40 pounds, 30 to 40 pounds, I guess." (R. 305). Claimant testified that he stands most of the time. (R. 305). Based on the medical records, Claimant's own testimony, and the vocational expert's testimony, the ALJ's RFC findings were proper.

Claimant argues that the prior ALJ's exertional level finding with respect to Claimant's prior period of disability, whatever it was, is binding on the current ALJ as the "administrative law of the case." Cl.'s Br. 6 (doc. 8). Under the law-of-the case doctrine, "a court should not

reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997). However, the Social Security Administration considers "later-filed applications as separate claims . . . a claim that one became disabled in 1990 is not the same claim as a claim that one became disabled in 1994." *Albright v. Commr. of Soc. Sec.*, 174 F.3d 473, 476 (4th Cir. 1999). Claimant previously received benefits in 1991 until the SSA terminated them in 1997. Claimant filed the current application in December 2003. Claimant's prior period of disability, that the SSA ultimately revoked in 1997, and the current application are separate and distinct actions and are not part of the same litigation. As such, the "law of the case" doctrine does not apply, and the prior ALJ's findings with respect to Claimant's exertional level are irrelevant to this claim.

C. **The ALJ Properly Considered the PRTF in Addition to the Other Medical Evidence of Record in Determining Claimant's RFC.**

Claimant argues that the ALJ erred by relying on Dr. Dobbs's PRTF. The Commissioner counters that the ALJ properly relied on the PRTF, in addition to other medical evidence of record, in reaching his RFC findings.

Dr. Dobbs, a non-examining reviewing state agency consultant, completed the PRTF in March 2004. Dr. Dobbs concluded that "claimant's mental impairments . . . result in mild restriction of activities of daily living. He has moderate or less limitations in understanding and memory, sustained concentration, persistence, and persistence and social interaction/functioning. He has no significant limitations pertaining to his abilities to respond appropriately to changes in the workplace. He has never experienced an episode of decompensation of an extended duration." (R. 24). The ALJ accepted Dr. Dobbs's conclusions by expressly adopting them as

his own.

Claimant cites *Swindle v. Sullivan*, 914 F. 2d 222 (11th Cir. 1990) for the proposition that the "opinion of a non-examining reviewing physician is entitled to little weight and, taken alone does not constitute substantial evidence to support an administrative decision." Cl.'s Br. 7 (doc. 8). Claimant also seems to argue that the ALJ rejected Claimant's treating physicians's opinions. Claimant's arguments have no merit. The ALJ did rely on the PRTF, but the ALJ expressly stated that he gave "controlling weight" to the treating physician's (Dr. Hogan) opinions, specifically that Claimant "has no more than moderate functional limitations as evidenced by his progress notes and the claimant's global assessment functioning scores." (R. 28). The ALJ expressly stated that he gave "great weight" to the consulting psychologist's (Dr. Woods) opinion that Claimant had a "mild panic disorder, a history of alcohol abuse, and a history of depressive disorder." (R. 28). The ALJ expressly stated that he gave "great weight" to the consulting physician's (Dr. Gill) opinion that Claimant had "normal physical abilities." (R. 28). The ALJ also expressly stated that he gave "great weight" to other "treating, examining and non-examining medical sources that determined that the claimant was capable of performing work activities with not more than mild to moderate functional limitations." (R. 28). The ALJ's decision thus reflects the proper weight given to the relevant opinions of these physicians.

Claimant also argues that the PRTF is "out of date" because it was two years old at the time of the ALJ's decision and took into account "evidence from treating sources only through December 2003." Cl.'s Br. 8 (doc. 8). This argument has no merit. The ALJ properly considered other medical evidence, including records that documented Claimant's treatment through January 2006. These subsequent records do not contradict Dr. Dobbs's PRTF findings.

As such, the ALJ properly considered the PRTF in making his RFC findings. Consequently, the ALJ's analysis was current, taking into account recent treatment consistent with Dr. Dobbs's PRTF findings.

### VII.  Conclusion

For the reasons previously stated, the court AFFIRMS the ALJ's decision. The court will enter a separate Order in conformity with this memorandum.

DONE and ORDERED this 19th day of March 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE